Good morning, Your Honors, and may it please the Court, Teresa Reed-Dippo for Petitioner Jose Eduardo Guerra. I'd like to reserve two minutes of my time for rebuttal. The BIA here failed to properly apply the clear error standard because it did not grapple with the evidentiary record or explain why the immigration judge's findings were not even plausible, as is required under this Court's decisions in Rodriguez and in Redore. First, the BIA discounted the immigration judge's findings as mere evidence of a dysfunctional prison system, but in fact the immigration judge found much more. She found that Mr. Guerra individually will deteriorate as to his mental health upon removal, and that he will therefore be at risk of the torture that frequently befalls marginalized deportees with mental illness in Mexico. Second, the BIA did not address the IJ's specific intent findings, that discrimination motivates ongoing abuses, and that inherently harmful practices like rapes and beatings are pervasive. Nor did the BIA address key evidence like the State Department country report and reports of the United Nations. Instead, the BIA just offered a perfunctory citation to the decade-old decision in Villegas and made broad overgeneralizations, the same mode of reasoning that this Court rejected in Redore. Ultimately, the immigration judge aggregated the risks that Mr. Guerra will be tortured by police and in mental health institutions and found a probability of torture warranting relief under the CAT. So, could you just take the BIA's decision, do you have it there in front of you? I do. Just walk through it and tell us, in your view, where there is error. Yes. Where the Board either failed to engage in clear error review or made factual determinations, which it can't do. Correct. So, I would start with the second paragraph on AR005. That's first, assuming the respondent will face criminal detention. So there, the BIA said that the record does not support the immigration judge's determination that the respondent faces a clear probability of being tortured as a result of criminal detention. So what was wrong with that statement? So the first thing that's wrong with it is that there's no citation to some aspect of the record that outweighs what the immigration judge did. The second thing that's that the immigration judge provided in her decision. Obviously, I'm going to walk through the BIA decision, but of course, it needs to be read to some degree in tandem with the immigration judge's actual findings here. And here, the immigration judge for this point cited a variety of evidence. But wasn't part of the problem that the immigration judge cited to a swath of records at one time. So it was difficult to pinpoint precisely what the immigration judge was relying upon. I think that kind of fostered the difficulty in the board decision. So I think the government emphasizes that point in its brief, but this Court has said that the immigration judge is not obligated to write an exegesis on every contention. It's only obligated to explain its decision and the reasons for its decision. But isn't it fair to have the immigration judge cite precisely to the record that it's relying upon to support its conclusions? I don't think so. Here, the immigration judge cited a variety of sources in the record because a variety of sources in the record supported her reasoning. So, for example, in this point about whether the respondent will be tortured by police in government detention, she described Mr. Guerra's individualized conditions. And at that point in her decision, she did cite very specific aspects of the record. She primarily relied on the psychological evaluation of Dr. Jane Christmas to talk about how Mr. Guerra is mentally ill, he will present as mentally ill, and he will deteriorate further if he is removed. Then, on the other hand, she cited a variety designed to inflict punishment upon him. Well, I think there's two findings that are in dispute here. I understood the Your Honor's question to be referring to the probability of torture by police, but I'm happy to discuss the specific intent of this as well. Well, I'm just asking, where in the record precisely did the IJ point to establish the to establish the fact that the torture that would be inflicted upon Mr. Guerra was intentional? Where is that specifically cited in the what document is specifically cited in the IJ decision to support that point? So, if there were only to be one document, it would be tab T of Exhibit 14. What's the strongest document to support the IJ's conclusion that the treatment that would be bestowed upon Mr. Guerra was for the intention of punishment and torture? What's the strongest document in the record to support the IJ's ruling? I think the strongest document is tab K of Exhibit 14. It's a report of Disability Rights International from 2015, and it describes how some of the abuses that are perpetrated in these mental health institutions, like beatings, like rapes, like the use of prolonged physical restraints, are clearly being used with the intent to inflict severe pain and suffering. What page of the record is that? It begins at page 704 of the record. And the immigration judge properly relied on that decision because it describes the kind of abuses that this Court has recognized evince specific intent on their face. So, for example, in Nuru v. Gonzalez, this Court described a situation in which an individual was tied up for a period of 20 days, 25 days, was beaten, was given very small rations of food, and the Court didn't do a separate inquiry into intent. It recognized that those abuses on their face showed specific intent. I think the same kinds of abuses are present in the record here, and the immigration judge relied on them in her decision when she said that employees of mental health institutions carry out actions that qualify as torture under the Convention Against Torture. So at AR-704, there's a specific description of rapes, sexual abuses, and also of prolonged physical restraints. I'd point out that these prolonged physical restraints are not sort of the benevolent restraints that might be administered for a brief period in a hospital setting. Instead, these are stories of individuals being tied up for years at a time, forced to urinate and defecate on themselves without any supervision, while they clearly express pain as a result of these practices. Those practices on their face show specific intent. But the immigration judge found another reason for specific intent as well. She talked about the widespread systemic discrimination in Mexico against individuals with mental illness, and she talked about how the government has failed to take action to end torturous practices and abuses in mental health institutions over a period of longer than a decade. So there were two specific parts to the immigration judge's finding of specific intent. The BIA didn't so much as mention the word discrimination in its decision. It didn't engage with these specific findings. And I think that's not enough to meet the standards set out by this court in Rodriguez and Ridore, that it actually needed to explain why it found clear error. Okay. That was the first paragraph. I'm happy to continue to walk the court through. Just one other one. Your time is running out. I'll give you a little additional time. But what about the second paragraph? So the second paragraph is where the BIA discusses the specific intent specifically, both in the second, third, and fourth paragraph. And there, I think what's notable about the BIA's failure to explain why it found clear error is that it doesn't cite any evidence that conflicts with the evidence relied upon by the immigration judge. Instead, it actually cites some 18 pages of the record, which, as this Court knows, is voluminous in this case. And those 18 pages are actually from the three reports of Disability Rights International, one of which I just mentioned, tab K. The other two are at the other two are tabs L and M. Those reports actually were cited directly by the immigration judge and provide equal, if not more, robust support for her finding of specific intent. Let me add, there's the last sentence of that second paragraph. It says, we find clear error in the immigration judge's determination to the contrary, and accord more weight to country reports in the record that she did not find persuasive. So is the Board there re-weighing the evidence? It is re-weighing the evidence. And what's more, it's not even giving an ex — I mean, it's not permitted to re-weigh the evidence under the clear error standard. But what's more, it says that it accorded more weight to country reports in the record than she did not find persuasive. It doesn't identify what those country reports were. It only cites in the following paragraph three reports that the immigration judge heavily relied on for her findings. It doesn't cite, for example, the State Department country report which the immigration judge squarely relied on. So I think it — the BIA is re-weighing the evidence, and it's also not even telling us what these country reports are. Roberts. Okay. Let me ask you this. If you were to prevail here, what's the relief you're asking for? So we think the best course in this case is for the Court to direct the BIA to grant relief on remand. In previous cases, like — Well, you're arguing — you're arguing that the Board committed legal error. That's correct. Right? And if we correct the legal error, doesn't that mean the Board should then redo its decision in light of what the correct law is? The Court could find in its discretion that remand is the appropriate course here, but I want to point the Court to Avendano-Hernandez and to Adu. In both of those cases, the immigration judge found that there was a likelihood of torture justifying relief under the Convention Against Torture. This Court remanded to the BIA with an order to grant relief because it recognized that there was a substantial likelihood that the immigrant would be tortured if he were removed. I think that's the case here. Okay. Thank you. We'll hear from the government. Good morning, Your Honors. Linda Cheng on behalf of the U.S. Attorney General. May it please the Court. In this case, the Board properly found clear error in the IJ's factual findings when she determined that petitions showed a clear probability of being tortured by Mexican police in detention and also the specific intent of healthcare workers in mental institutions to inflict severe pain and suffering. The Board properly explained the basis for rejecting these findings as clearly erroneous because they were unsupported by the record and therefore unreasonable. And to address Your Honor's first point about looking into the Board's decision, in paragraph 2, starting with the sentence, first assuming, you had asked for a support the immigration judge's determination that he faces a clear probability of being tortured. There is no citation because there is no document in the record that would support the IJ's factual finding for this. It would be to cite to an absence of. Therefore, it does not exist. Additionally, the regulations are very clear that Petitioner must establish that he is more likely than not to be the victim of conduct resulting in consequences which are specifically intended to inflict severe physical or mental pain and suffering. An act that results in unanticipated or unintended severity of pain and suffering is not torture. Now, while there is documentation in the record that conditions in mental institutions are deplorable or rather appalling, this does not equate to that finding in Chavarron and Perez-Gutierrez. Can I ask you a question about some of the Board's statements? Yes. In that first paragraph where it begins with the word first. Yes. It goes on to say, however, we do not find that, let's see, I'm sorry, however, we do not find that a dysfunctional prison system in itself equates to or requires a grant of protection under the Convention, under CAT, to detainees generally who are in the system. In essence, isn't that the Board just there rejecting what the IJ did to some extent? What is the Board doing there? This statement is addressing the fact that there was a lack of evidence in a finding of clear probability of torture in prisons. Right. So, therefore, the evidence that does demonstrate a dysfunctional prison system, which is in the record, is not sufficient to satisfy certain conditions. Isn't the Board there just making a finding separate from what the IJ did? No. Why not? The Board has assessed the record in its totality and discovered that, as the IJ stated, the conditions in prisons are not ideal. I mean, that gets to the whole point of what counsel was just arguing, which was that you have to look at it in the aggregate. Yes, even looking at it in the aggregate, though, there is no specific individualized evidence that this petitioner would more likely than not be tortured when he is detained by police. The evidence does show that prison conditions are not ideal. They're appalling. They're deplorable. Especially for people who suffer from mental health conditions. Not necessarily. The record shows that the police do inflict beatings and other physical harm upon detainees to coerce confessions, but that is not the circumstance that petitioner is now alleging. Before you go, I want to take you to the paragraph that begins with the word second. And again, that last sentence. We find a clear error in the immigration judge's determination to the contrary and accord more weight to country reports in the record that she did not find persuasive. How can the Board do that? So this was just poor phrasing to a certain extent. In order to assess what the Board is saying here, we need to look at the full context of this paragraph in the decision. And it's clear that the Board was looking for the whole record for clear error. In that sense, that any factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. So here, there is no record support for the immigration judge's findings as specified here. And therefore, the Board found clear error. So to clarify, there is nothing in the record that supports the immigration judge's decision? I mean, you know, we've laid out, and they themselves have laid out, the Board, that is, has laid out how they understand clear error review. Yes. The findings of the IJ have to be illogical, implausible. The inferences are not supported by the record evidence. And, you know, that's the standard that they've adopted. We said that's the standard there to apply. But it's hard, you know, your argument is that, well, that's obviously what they were doing, but it's not entirely clear to me that that's what they were doing. Well, it's hard in this context because it doesn't exist in the record. So it's hard to compare and contrast the immigration judge's finding with how the Board is determining that it's clearly erroneous if there's an absence in the record. But this sentence is implying or stating more so that because it's not in the record, there is actually countervailing evidence of country conditions that show otherwise. And so if we go back to Tab or Exhibit K, as Petitioner mentioned, within there, there is statements that the DRI first documented these problems in 2000. And then following the release of that report, the Government of Mexico brought these concerns of people with disabilities to the U.N. and sponsored a resolution to draft a new U.N. Convention on the Rights of Persons with Disabilities. And by sponsoring this, Mexico made an important contribution to international law and rights of persons with disabilities. So there we're looking at positive evidence that goes countervailing to what the IJ found, that there is evidence that there's a specific intent to harm. Rather, there's the countervailing point that Mexico is actually making attempts to improve the situation. And this court has found in cases that such attempts to improve actually undermine the specific intent requirement in the Convention Against Torture. So let me ask you one last question for you, which is the last sentence at the bottom of And while these practices can result in the inhumane treatment of patients who manifest symptoms that staff members might perceive as dangerous, we find clear error in the IJ's finding that the evidence in the record shows that such behavior is carried out to punish patients for being dangerous in light of the countervailing country evidence highlighting persuasive alternative reasons for institutional abuses. Isn't the IJ — isn't the Board just reweighing the evidence? No. Again, this is another finding that is not substantiated in the record. There is no documentation that punishes — But they look at the record evidence and they say, well, IJ did this, looked at this, but in light of this other stuff, which we find more persuasive, we think that's the correct — you know, that's what the IJ should have relied upon. But isn't that just sort of looking at the evidence and saying — reweighing it and say, we're going to go with this one? Actually, Your Honor, that's not the situation because in this case it's not one versus the other. It's the absence of any evidence to support the IJ's decision versus something that doesn't appear in the record. There must have been some evidence in the record here relating to this last sentence that I just read because they seem to point — in light of countervailing country evidence. So that would be in contradiction to the immigration judge's finding that was based in the absence of any record evidence. And so if we look at the record itself, the characterization of dangerous comes from a New York Times article which quotes an advocate for the mentally ill who is not a healthcare worker himself as stating that people have prejudices and think these people are dangerous. However, that does not suffice to show a prescribed purpose, which is necessary to meet the definition of torture under the regulations. And so based on such a small quote within a document, the IJ has not provided any documentation or support in this record for this finding. However, the countervailing country condition reports show otherwise, which is what the Board is trying to highlight here. And even if we look just flipping through at these documents, we see that there is evidence that the staff lacks supervision. They lack funds. They lack resources. And these are clearly documented. However, there is no documentation of punishment as a prescribed purpose of any infliction of torture. Okay. Okay. Thank you. I think I understand your argument. I'll be brief. The government excuses the BIA's lack of citation to any evidence in the record by saying that there was no record support for the immigration judge's findings. Respectfully, that's plain from the face of the immigration judge's decision that that is not true. The immigration judge cited a great deal of evidence. Some of it she quoted. In some cases, she cited ranges of evidence because multiple sources supported her findings. So, for that reason, I don't think it's sufficient to say that the BIA didn't cite anything because there was no record support for the immigration judge's finding. It's plain from the face of the immigration judge's decision that that's not true. Second, the government defends the notion that the BIA found that Mexico is trying to improve conditions in mental health institutions. The BIA didn't cite any specific evidence on that point. And, in fact, the immigration judge found, as was plausible, that although the government has made promises of reform, conditions on the ground haven't actually changed. For all of these reasons, we ask the Court to remand to the BIA and direct it to grant relief. Thank you. Thank you. We're going to take a 10 minutes? We're going to take a 10-minute break. Members of the audience are going to leave, and we need to check in with our tech department. There will be a 10-minute recess.
judges: Murphy, Paez, Rawlinson